PYE (REEVES v.). See Case No. 11,662.

## Case No. 11,488.

### PYE v. UNITED STATES.

[1 Hayw. & H. 90.] [1]

Circuit Court, District of Columbia. June 4, 1842.

LARCENY—TESTIMONY TO SUSTAIN INDICTMENT.

An indictment for larceny cannot be sustained on the testimony of the prosecuting witness that he loaned the confederate of the prisoner money with which to gamble, and on the prisoner winning the money, went off with it notwithstanding the objection of the witness, who stated, "I hope you did not bring me around here to rob me instead of selling me a coat."

In error to the criminal court.

[This was an indictment for larceny against Thomas Pye.]

J. M. Carlisle, for prisoner.

P. R. Fendall, for the United States.

DUNLOP, Circuit Judge. The indictment charges in substance, that the petitioner did feloniously steal, take and carry away four instruments in writing, each of the value of two dollars, of the goods and chattels of one Adams, and did feloniously steal, take and carry away four pieces of paper, being of the value of six and a quarter cents, of the goods and chattels of said Adams. The jury brought in a verdict of guilty. The defendant, by his attorney, moved that the verdict be quashed, being insufficient and erroneous. On due consideration the court overruled the motion and gave the following judgment: That the defendant pay a fine of eight dollars and be imprisoned in county jail for four months.

Before the jurors retired, the attorney for the defendant filed the following bill of exceptions: The United States proved by Adams, a competent witness, duly sworn in the cause, that on the afternoon of December 22, 1841, he was induced by the prisoner to accompany him to a certain stable for the purpose of examining a coat which the prisoner had offered to sell him very cheap; that before they entered the stable Jefferson Roach came in, and after some further conversation between the three concerning the coat, and promises on the part of Pye and Roach to produce the coat, Pye and Roach produced a pack of cards and played therewith; that Roach applied to said Adams for a loan of money to make a bet with Pye; that after much solicitation said Adams lent said Roach four two dollar orders of the Baltimore Company; that Roach and Pye immediately made a bet which Roach lost, and handed over to Pye the money he had borrowed from Adams, exclaiming to Adams, "He has won all my money and yours too, now what am I to do to pay you?" that Ad-

[1] [Reported by John A. Hayward, Esq., and Geo. C. Hazleton, Esq.]

ams exclaimed, "Gentlemen, I hope you did not bring me around here to rob me instead of selling me a coat;" that Pye said, with an oath, that he would keep the money; that no coat was ever produced by either Pye or Roach or any one else; that Pye went away; that Roach went out with Adams in pursuit of Pye, but took Adams in a direction different from that in which Pye had gone; and that Adams advised with two cousins of his, and got a warrant for apprehending Pye and Roach. Adams further stated that when he lent Roach the money, he expected Roach to return it in a few minutes, whether he should lose or win the bet; and that Roach promised to return it in a few minutes. The United States further proved by John Key that on an evening about three weeks ago he saw Roach and Pye together in front of Mrs. Riley's on Pennsylvania avenue, between 3d and 4½ streets; that he heard Pye say to Roach, "I have got all that fellow's money," and saw them divide the money. That he did not see what particular money it was, but saw that it was paper money; that witness did not know who was the man referred to as "that fellow"; and that he had not heard Pye making said exclamation or saw Pye and Roach dividing money on any other occasions. The United States proved by Lambert S. Beck that he was employed by Adams to arrest Pye and Roach on a charge of swindling; that he saw Roach with others at the house of Spencer Day, near the railroad depot; that Roach, as soon as he saw witness, ran away; that Pye was then pointed out to witness as if apparently hiding from him; that witness seized him, and before witness told him what he was arrested for, Pye said he did not know Adams, had never seen him, and that he was at home when Adams was robbed of his money in the stable; that Pye denied that he had any money at all. Witness searched him at the magistrate's office and found upon him a five dollar note said to be of a broken bank, and a few copper coins; that witness took him to jail; that Pye then declared that he had no other money whatever; that witness searched him and found between his drawers, which were very tight and tied below, and his flesh, some Rails-money, witness thinks a two-dollar note and a one-dollar

note; that when they dropped from him on the floor, he very slyly and quickly slipt his foot over them; witness enquired how he came by them, and he gave no account; that they were the same kind of money which Adams had sworn he had lost. Witness further proved that Mrs. Riley's is very near the stable where the money was lost; that Pye and Roach and others were in the habit of frequenting Mrs. Riley's, but their principal rendezvous was at Spencer Day's. The United States further proved by Robert Dall, that a two-dollar Baltimore & Ohio Railroad order, which witness produced on the trial, and a one-dollar order of the same money, which was not produced, were found on the prisoner in the manner stated. The United States further proved by the said Adams, that after the cards were produced as aforesaid, and before the said Roach applied to the prosecutor, Adams, for a loan of money as aforesaid, he had endeavored to induce the said prosecutor to join in the game or to stake some money by way of bet thereupon, but that the said prosecutor positively refused to do so, and said he knew nothing about gambling and would not risk any money upon it; that subsequently, upon the application of the said Roach, the said prosecutor willingly loaned him the railroad orders as aforesaid, as a loan of money, thinking Jeff a pretty clever fellow, confidently trusting he would repay the said loan to him however the game might result, or whether he lost or won thereupon.

Whereupon, the prisoner, by his counsel, prayed the court to instruct the jury, that upon the evidence so offered by the United States, if believed to be true, the prisoner is entitled to an acquittal; which instructions the court refused to give; and the defendant excepts, and prays the court to sign and seal this bill of exception, which is done accordingly, this 26th March, 1842.

James Dunlop.

On hearing the argument of the counsel for the defendant and of the attorney for the United States, THE COURT reversed the judgment of the criminal court.

PYFER (CALDER v.).  See Case No. 2,299.
PYLE (DUNLAP v.).  See Case No. 4,163.